## In re UNITED EDUCATIONAL CO.

### Appeal of PERKINS-GOODWIN CO.

(Circuit Court of Appeals, Second Circuit. March 26, 1907.)

#### No. 209.

SALES—DISTINGUISHED FROM PLEDGE—CORPORATE STOCK.

> B., being desirous of reorganizing the business of K. & Co., who were indebted to claimant, organized the E. Company, of the preferred stock of which claimant agreed to accept $5,000 of K. & Co.'s indebtedness, with a bonus of 20 per cent. common stock, and agreed not to press the new corporation for the remaining indebtedness so long as claimant felt assured of its ultimate success, it being also agreed that B., through the new corporation, should sell to others the full preferred capital stock issue of the company and redeem within 18 months the preferred stock and bonus which claimant agreed to accept as a temporary arrangement to further a reorganization, but before this could be accomplished the new corporation became a bankrupt. Held, that claimant's arrangement constituted a pledge of the new corporation's stock as security for the debt of K. & Co., and not a sale of such stock.

> [Ed. Note.—Rights and liabilities of pledgees of corporate stock, see note to Frater v. Old Nat. Bank of Providence, R. I., et al., 42 C. C. A. 135.]

Appeal from the District Court of the United States for the Southern District of New York.

On appeal from an order confirming an order of the Referee in Bankruptcy which reduced the claim of the appellant—The Perkins-Goodwin Company—to to extent of $5,000. The Perkins-Goodwin Company filed a proof of debt against the United Educational Company, the bankrupt, for merchandise sold and delivered in the sum of $23,944.26. Upon an order for the re-examination of the claim the referee reduced the amount to $18,944.26 and his action was subsequently sustained by the District Court. The facts are fully set out in the opinion of the referee and need not be repeated here. Suffice it to say that the negotiations between the parties culminated in a letter, dated April 10, 1905, written by the Perkins-Goodwin Company to F. R. Boocock, representing the bankrupt, then about to be organized. This letter and the reply sufficiently state the agreement. It is as follows:

"Dear Sir: We understand that it is your purpose to organize a new company with a capitalization of $300,000, of which $100,000 is to be preferred stock, for the purpose of acquiring the business, assets and good-will of E. L. Kellogg & Co. and such other independent periodicals as it may appear wise and advantageous to secure. Of this preferred capital stock, we understand that you purpose underwriting $40,000 before the operation of the new company in order to provide cash working capital, but that the cash under this underwriting guarantee will not be available for a period of six months.

"In order that you may succeed in your purpose, we agree, upon submission to us of evidence that the $40,000 of preferred stock has been underwritten, to accept $5,000 of whatever amount E. L. Kellogg & Co. may now owe us or that may become due upon May 15th so long as the present indebted-

ness is not increased, in the 7% cumulative preferred stock of the new company with a bonus of 20% of common stock, and that we will not press you upon the remaining indebtedness so long as we feel assured of your ultimate success in the matter.

"It is understood, however, that you will sell through your own periodicals and other channels the full preferred capital stock issue of the new company and redeem within eighteen months the preferred stock and bonus which we thus agree to accept as a temporary arrangement to further your plans.

"We also understand that the assets of the new company will be sufficient to thorougly protect the preferred stock issue, that the earning capacity is reasonably certain to earn dividends upon the preferred stock, and that the employment of the total preferred stock issue as planned will not only entirely liquidate all assumed indebtedness but provide also substantial cash working capital."

About the middle of May thereafter the certificates of stock were delivered to the Perkins-Goodwin Company and, on June 2, 1905, Mr. Boocock, representing the bankrupt, wrote as follows:

"Perkins, Goodwin & Co., City—Gentlemen: Under date of April the 10th you addressed a communication to the writer agreeing to accept, provided he was successful in his reorganization of the E. L. Kellogg & Company, $5,000 of the preferred stock of the new corporation in exchange for a like amount of indebtedness of E. L. Kellogg & Co. We have completed our part of the arrangement by turning over to you the stock in question, and receiving your receipt therefor, and we take pleasure in confirming that paragraph of the letter in question relative to the purpose on our part to relieve you by sale in other directions within a period of eighteen months of the stock you thus accept."

Upon the failure of the United Educational Company to comply with the conditions of the letter of April 10 the certificates of stock were returned to its president December 12, 1905. The company was adjudicated a bankrupt on December 26, 1905, at which time it had not disposed of all its preferred stock.

Mortimer W. Byers, for appellant.

Charles D. Ridgway, for trustee in bankruptcy.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge. We are unable to agree with the referee in thinking that the agreement, as expressed in the correspondence, amounted to an absolute purchase from the Educational Company of $5,000 of its preferred stock, the consideration being a reduction of its indebtedness to the Perkins-Goodwin Company to that amount, which purchase was fully consummated by the delivery of the stock. We are also of the opinion that the referee erred in construing the agreement to sell the entire amount of preferred stock and to redeem the $5,000 taken by the Perkins-Goodwin Company as the personal undertaking of Mr. Boocock.

On the contrary we think that, read in the light of the surrounding circumstances, the correspondence clearly establishes an agreement for an extension of credit for eighteen months with the stock as collateral security.

Our reasons for this conclusion may be epitomized as follows:

First. The stock was taken solely as an accommodation to the new company to enable it to get a successful start.

Second. The Perkins-Goodwin Company had been solicited and had declined to take stock in the new company in payment of the indebtedness, or otherwise.

Third. The express agreement to "redeem within eighteen months" and the acceptance of the stock as "a temporary arrangement to further your plans" are wholly incompatible with the theory of an absolute sale of the stock.

Fourth. It is true that the letter of April 10 was addressed to Mr. Boocock personally, for the reason that the new company had not then been organized. Subsequently Mr. Boocock became its present and general manager. The actual agreement was between the two corporations and the action of the Educational Company in delivering the stock was an acceptance of the terms stated in the letter of April 10 and a ratification thereof.

The transaction has all the attributes of a pledge. The Educational Company was to have eighteen months in which to pay its debt on condition that it transferred $5,000 stock as collateral and redeemed it within that time. The debt was not paid; the time of payment was extended but the obligation to pay remained.

The use of the words "and redeem within eighteen months the preferred stock and bonus" is inconsistent with the theory of an absolute sale.

"To redeem is defined as to purchase back; to regain possession by payment of a stipulated price; to repurchase; to regain, as mortgage property, by paying what is due; to receive back by paying the obligation." 24 Am. and Eng. Encyclopedia (2d Ed.) p. 214.

One member of the court is inclined to the opinion that the evidence tends to establish a conditional sale rather than a pledge, but as the same result, though by different methods, must be reached whichever theory is adopted, he concurs in the result.

The order is reversed with costs and the matter is remanded to the District Court with instructions to allow the claim of the appellant in full.